```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ------------------------------x
                                        21-CR-468(CBA)
 3   UNITED STATES OF AMERICA,
                                        United States Courthouse
 4                                      Brooklyn, New York

 5            -versus-                  October 04, 2021
                                        12:00 p.m.
 6   RICHARD ZAVADA,

 7            Defendant.

 8   ------------------------------x

 9        TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT AND PLEA
                 BEFORE THE HONORABLE CAROL B. AMON
10                  UNITED STATES DISTRICT JUDGE

11   APPEARANCES

12   For the Government:        UNITED STATES ATTORNEY'S OFFICE
                                Eastern District of New York
13                              271 Cadman Plaza East
                                Brooklyn, New York 11201
14                              BY:  ARTIE MCCONNELL, ESQ.
                                Assistant United States Attorney
15
     For the Defendant:        BY:  EDWARD POLERMO, ESQ.
16

17   Court Reporter:           Rivka Teich, CSR, RPR, RMR, FCRR
                                Phone:  718-613-2268
18                              Email:  RivkaTeich@gmail.com

19   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
20

21

22

23

24

25
```

ARRAIGNMENT - PLEA

1              (In open court.)

2              THE COURTROOM DEPUTY:  All Rise.  Criminal cause for

3     an arraignment and plea, 21-CR-468, U.S.A. vs. Richard Zavada.

4              May the parties please state your name for the

5     record, starting with the Government.

6              MR. McCONNELL:  Arty McConnell for the United

7     States.  Good afternoon.

8              MR. PALERMO:  For Mr. Zavada, Edward Palermo.

9              THE COURT:  Good afternoon.  Do you have an

10    application, Mr. Palermo?

11             MR. PALERMO:  I do, your Honor, to waive Indictment.

12             THE COURT:  Your client wishes to waive Indictment

13    and permit the Government to file a felony Information?

14             MR. PALERMO:  Correct, your Honor.

15             THE COURT:  Does thereafter he wish to enter a

16    guilty plea to that felony Information?

17             MR. PALERMO:  He does, your Honor.

18             THE COURT:  Mr. Zavada, your counsel tells me that

19    you wish to first of all waive Indictment to permit the

20    Government to file a felony charge; and then after that you in

21    fact want to plead guilty to the charge that's filed.  These

22    are both very serious decisions.  I have to make sure that you

23    understand all of your rights and the consequences of waiving

24    Indictment and pleading guilty.  That means that I have to ask

25    you a whole series of questions.  I require that your answers

ARRAIGNMENT - PLEA

1  to my questions be made under oath.  So my courtroom deputy

2  will administer an oath to you to tell the truth.

3          THE COURTROOM DEPUTY:  Please rate your right hand.

4          (Defendant sworn.)

5          THE DEFENDANT:  I do.

6          THE COURT:  You can be seated now.

7          Having been sworn to tell the truth, Mr. Zavada, you

8  have to do that.  If you were to lie on purpose in response to

9  any questions that I ask you, you could face a further

10 criminal charge for perjury or false statement.  Do you

11 understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  If there is anything that I say that you

14 don't understand, just tell me you don't understand it.  I'll

15 try to make it plainer; is that clear?

16         THE DEFENDANT:  Yes.

17         THE COURT:  First of all, how old are you?

18         THE DEFENDANT:  Sixty-six.

19         THE COURT:  How far in school did you go?

20         THE DEFENDANT:  I had completed high school and then

21 a bunch of college courses.

22         THE COURT:  Are you currently or are have you

23 recently been under the care of a doctor, including a

24 psychiatrist for any reason?

25         THE DEFENDANT:  Yes.

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

ARRAIGNMENT - PLEA

1          THE COURT:  What are you under a doctor's care for?

2          THE DEFENDANT:  Several things.  Pretrial asked me

3   to see a psychiatrist -- psychologist.  They then coached me

4   to see a psychiatrist because of anxiety since the day this

5   occurred to me -- I've been a complete --

6          THE COURT:  Are you seeing a psychiatrist now?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And the psychologist?

9          THE DEFENDANT:  Yes.  The psychiatrist was just to

10  check when I started getting these anxiety attacks by my

11  primary care physician who administered me some medication.

12  So the people at the psychology group recommended to see a

13  psychiatrist who's main job is to administer that so that we

14  can check the dose and make sure that I'm getting the proper

15  medication, which I did.  And then he increased my dose.

16         THE COURT:  You are on medication for anxiety now?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Have you taken that medication in the

19  last 24 hours?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Does that medication in any way

22  interfere with your ability to think clearly?

23         THE DEFENDANT:  No.

24         THE COURT:  What is the medication?  Do you know the

25  name of it.

ARRAIGNMENT – PLEA

1          THE DEFENDANT:  Lexapro.

2          THE COURT:  In the past 24 hours, other than

3    Lexapro, have you taken any other prescription medication,

4    drugs of any kind, or alcohol?

5          THE DEFENDANT:  Yes.  I'm on a regimen of medication

6    for my heart.

7          THE COURT:  Okay.

8          THE DEFENDANT:  I have it all on my cellphone, but I

9    don't have my cellphone here.

10          THE COURT:  So there are medications you take, heart

11    medications you take.

12          THE DEFENDANT:  Right.

13          THE COURT:  Have you taken those in the last 24

14    hours?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do any of those medications affect your

17    thinking?

18          THE DEFENDANT:  No.

19          THE COURT:  Other than your Lexapro and your heart

20    medication, is there anything else that you've take within the

21    last 24 hours, including alcohol?

22          THE DEFENDANT:  Yes.  I had a drink last night; a

23    little bit nervous.

24          THE COURT:  That was last night?

25          THE DEFENDANT:  Yes.

ARRAIGNMENT – PLEA

1    THE COURT:  Have the effects of that alcohol worn

2 off?

3    THE DEFENDANT:  Absolutely.

4    THE COURT:  Is your mind clear today?

5    THE DEFENDANT:  Yes.

6    THE COURT:  Counsel, have you discussed the question

7 with your client of both waiving Indictment and entering into

8 a guilty plea?

9    MR. PALERMO:  I have.

10    THE COURT:  In your view, does he understand the

11 rights he's waiving by pleading guilty and by waiving

12 Indictment?

13    MR. PALERMO:  Yes, your Honor.

14    THE COURT:  Do you have any question about his

15 competency to proceed?

16    MR. PALERMO:  No, I do not.

17    THE COURT:  Mr. Zavada, have you had enough time to

18 discuss with your attorney the decision both to waive

19 Indictment and to enter a guilty plea?

20    THE DEFENDANT:  Yes, I have.

21    THE COURT:  Are you satisfied to have him represent

22 you?

23    THE DEFENDANT:  Yes, I am.

24    THE COURT:  Let me review the charge in the

25 Information, then advise you about the rights you're giving up

ARRAIGNMENT - PLEA

1    in connection with waiving Indictment, then advise you about

2    the rights you would be giving up with pleading guilty.

3            Let me just go over the charge.  First of all, have

4    you read the charge over before?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Has your attorney explained to you what

7    the Government would have to prove in support of that charge?

8            THE DEFENDANT:  Yes, he has.

9            THE COURT:  I'm just going to review it.  In

10   substance it says, between July 2013 and July 2020 in the

11   Eastern District of New York that the defendant, Richard

12   Zavada, knowingly and intentionally used a facility of

13   interstate or foreign commerce.  I think the Government here

14   contends that's a cellphone; is that right?

15           MR. McCONNELL:  Yes.

16           THE COURT:  That you used this to promote and carry

17   on unlawful activity, the unlawful activity that they identify

18   is commercial bribery.  Then they say, thereafter you

19   attempted to perform acts to promote this commercial bribery.

20           Since the unlawful activity that they talk about

21   there is commercial bribery, they would have to prove all the

22   elements of commercial bribery as well.  The elements of

23   commercial bribery would be that as an employee you accepted a

24   form of a benefit for another person; that such person

25   solicited, agreed to accept the benefit, that being you, with

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

ARRAIGNMENT - PLEA

1    the understanding that it would influence your conduct with

2    regard to your employer's affairs, and that you engaged in

3    this conduct without getting your employer's consent.

4          So they would have to prove each of the elements of

5    that crime by prove beyond a reasonable doubt.  Do you

6    understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  When you waive Indictment, what you are

9    doing is giving up your right to have a Grand Jury decide

10   whether this charge should be brought.

11         As I said, this is a felony charge.  It has the

12   potential penalty of five years in jail.  It can be followed

13   by a period of supervised release, the maximum of which is

14   three years.  If you violate it, you go back to jail for two

15   years.  It has a whole series of financial penalties that

16   could be all added together, $250,000 fine.

17         Is that the maximum fine?

18         MR. McCONNELL:  Yes.

19         THE COURT:  A restitution, which would be in what

20   approximate amount?

21         MR. McCONNELL:  It would be around the amount of the

22   defendant's forfeiture judgment.  But as I mentioned, your

23   Honor, we're determining whether or not there is any loss and

24   where that loss lies in terms who incurred it.  That's

25   something that we're continuing to investigate and I've

ARRAIGNMENT - PLEA

1  discussed that with counsel.

2           THE COURT:  There is $100 special assessment, which

3  is mandatory.  And also another penalty would be a forfeiture,

4  the criminal forfeiture.  I can't exactly figure this out

5  looking at your forfeiture paragraph, is that all those

6  numbers added together?

7           MR. McCONNELL:  Yes, your Honor.  There were money

8  that was seized both from a safety deposit box and from the

9  defendant's home.  The amount from the residence was $30,635.

10 There was $300,100 in cash seized from a safety deposit box.

11          The defendant also agreed to enter a $187,000

12 forfeiture money judgment on top of that.  So the aggregate of

13 those three numbers.

14          THE COURT:  Is what?  Is it agreed that all that

15 money would be forfeited?

16          MR. McCONNELL:  Yes.

17          THE COURT:  It's over a half million dollars, right?

18          MR. McCONNELL:  Yes $517,635.  So it's the two

19 amounts which were seized, which are forfeited.  And the

20 defendant will enter an additional forfeiture money judgment

21 on top of that of $187,000.

22          THE COURT:  Do you understand that pursuant to this

23 charge that's what the Government says the criminal forfeiture

24 would be?

25          THE DEFENDANT:  I understand.

ARRAIGNMENT - PLEA

1          THE COURT:  On a charge of this severity the

2   Government can't come into court and file it in the form of an

3   Information unless you agree to it.  What they would otherwise

4   have to do is present evidence to a Grand Jury.

5          A Grand Jury is a body of 23 citizens.  If the Grand

6   Jury found that the Government had shown by probable cause

7   that you committed the offense, they would return the charge

8   in the form of what is called an Indictment.  So when you

9   waive Indictment, what you're doing is giving up the right to

10  have the Grand Jury decide whether that charge should be

11  brought just letting the Government come to court and file it.

12  Do you understand.

13          THE DEFENDANT:  Yes, I do.

14          THE COURT:  I have before me a document waiver of

15  Indictment that was signed by you; is that correct?

16          THE DEFENDANT:  That's correct.

17          THE COURT:  Did you enter into this waiver of

18  Indictment knowingly and voluntarily?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Did anyone threaten or force you to

21  waive Indictment?

22          THE DEFENDANT:  No.

23          THE COURT:  I'll accept the waiver of Indictment.

24          I'm told that you also wish to enter a guilty plea

25  to the charge that's been filed in the form of an Information.

ARRAIGNMENT - PLEA

1   Even though you've agreed to have this charge filed, you still

2   don't have to plead guilty to it.  You have a right to plead

3   not guilty to the Information.  Do you understand that?

4             THE DEFENDANT:  Yes.

5             THE COURT:  If you pled not guilty to the

6   Information, you would have a right under the Constitution and

7   laws of the United States to a speedy trial and public trial

8   before a jury with the assistance of your attorney.  Do you

9   understand that?

10            THE DEFENDANT:  Yes.

11            THE COURT:  That jury would also be called upon to

12  determine the amount of forfeiture.  In other words, the

13  Government couldn't just come and say the money had to be

14  forfeited.  They would have to persuade the jury that it's

15  appropriate to forfeit it.  Do you understand that?

16            THE DEFENDANT:  Yes.

17            THE COURT:  At trial you would be presumed innocent.

18  You don't have to prove you are innocent.  Under the our

19  system of law, it's the Government that has the burden of

20  proof, that's proof beyond a reasonable doubt that you're

21  guilty of the crime charged.  If the Government failed to meet

22  the burden of proof, the jury would have to the duty to find

23  you not guilty.  Do you understand?

24            THE DEFENDANT:  Yes.

25            THE COURT:  In the course of a trial witnesses for

ARRAIGNMENT - PLEA

1   the Government have to come to court, testify in your

2   presence.  Your lawyer would have the right to cross-examine

3   these witnesses.  He can raise legal objections to evidence

4   the Government sought to offer against you.  He could offer

5   evidence on your behalf.  He would also have the right to

6   subpoena witnesses to make them come to court if he thought

7   that they would be helpful.  Do you understand that?

8               THE DEFENDANT:  Yes.

9               THE COURT:  At trial you would have the right to

10  testify in your own behalf if you wanted to.  On the other

11  hand, you could not be forced to be a witness at your trial.

12  Under the Constitution and laws of the United States, no

13  person can be made to be a witness against himself.  So if you

14  wanted to go to trial but decided not to testify, I would tell

15  the jury they could not hold that against you.  Do you

16  understand?

17              THE DEFENDANT:  Yes.

18              THE COURT:  If instead of going to trial you plead

19  guilty to the crime charge, and if I accept your guilty plea,

20  you'll be giving up your right to a trial and all the other

21  rights I've just discussed.  There will be no trial in this

22  case and no right to any appeal on the question of whether you

23  did or did not commit the crime.  I will simply enter a

24  judgment of guilty based upon your plea.  Do you understand?

25              THE DEFENDANT:  Yes.

ARRAIGNMENT - PLEA

1          THE COURT:  If you do plead guilty I'm going to ask

2     you questions about what you did in order to satisfy myself

3     that you are guilty of the charge.  You're going to have to

4     answer my questions and admit your guilt, that means you'll be

5     giving up the right not to incriminate yourself.  Do you

6     understand?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Are you willing to give up your right to

9     a trial and all the other rights I've just mentioned?

10         THE DEFENDANT:  Yes, I am.

11         THE COURT:  I have before me a plea agreement, which

12    is marked Government Exhibit 1.  It's a nine-page document.

13         Mr. McConnell, do you represent on behalf of the

14    United States Attorney's Office that the nine-page document

15    before the Court contains the entirety of any understanding

16    your office has reached with this defendant?

17         MR. McCONNELL:  I do, your Honor.  There is one

18    additional thing to put on the record.

19         The defendant at the time that his home was searched

20    was in possession of a number of firearms lawfully.  But as a

21    result of his release and the conditions of his pretrial

22    supervision in this case, he surrendered those firearms to law

23    enforcement.  As a result of his conviction in this case,

24    ultimately, he will be prohibited from owning or possessing

25    firearms.

ARRAIGNMENT - PLEA

1      So the defendant has executed a waiver of timeliness

2  for the items, the firearms that were recovered from his

3  house, in which he essentially forfeits all rights to them to

4  the Government who will dispose of them after his sentence.

5      THE COURT:  Okay.

6      MR. McCONNELL:  Other than that, the plea agreement

7  represents the totality of agreement between the Government

8  and the defendant.

9      THE COURT:  The only added factor is that he's

10  agreeing to forfeiture of all the firearms seized at his

11  residence.

12      MR. McCONNELL:  That's right.

13      THE COURT:  Mr. Zavada; is that correct?

14      THE DEFENDANT:  I already done that.  I signed off

15  on that with a legal document.  The handguns that I had, I

16  legally transferred them over to my daughter through the

17  Nassau County Police Department.  And the shotguns and rifles

18  I also developed a list:  Make, model, serial number of each

19  weapon.  And I transferred them over to my daughter too, as

20  well to her home, as per the district attorney at the time.

21  And he was satisfied with that.

22      THE COURT:  That sounds like you're talking about

23  two different things.

24      The Government says they are going to forfeit them

25  and destroy them, correct?  Are you all on the same page about

ARRAIGNMENT – PLEA

1  this?

2          MR. McCONNELL:  Let me check, your Honor.

3          That's all correct.  The items that are the subject

4  of this list are separate apart from what Mr. Zavada just

5  said.  There are four additional items that are being waived.

6          THE DEFENDANT:  Okay.  It's understood.  For those

7  items there, yes, I agree with that.

8          The Government has them.

9          THE COURT:  Does the Government have the other guns

10 or does the daughter have them?

11          MR. McCONNELL:  The guns that were released to the

12 daughter were appropriately released to her.  We're fine with

13 that.

14          These additional items, the waiver of timeliness,

15 were executed separate and apart from that.  I believe they

16 were not on the defendant's permit or something that's why

17 they are forfeited to the Government.

18          THE COURT:  What guns are they?  Have you identified

19 them?

20          MR. McCONNELL:  I can file this with the Court as

21 well:  9 millimeter handgun, serial number 209; two Magnum

22 barely shotguns, I believe serial numbers 578 and 831; Magnum

23 Frame with no serial number.

24          THE COURT:  Is it understood, Mr. Zavada, that those

25 are guns that are not being transferred to family members,

ARRAIGNMENT - PLEA

1    that were found in your home, and the Government is forfeiting

2    those and destroying them.  Do you understand that?

3                THE DEFENDANT:  Yes.  And I'm in total agreement

4    with that.

5                THE COURT:  Okay.  And the other guns the Government

6    is not in possession of now; is that correct?

7                THE DEFENDANT:  That is correct.

8                THE COURT:  And the Government's position with

9    respect to the other guns, is that they were lawfully

10   transferred to his daughter.

11               MR. McCONNELL:  That's right.

12               THE COURT:  Were they taken at any point by the

13   Government?

14               MR. McCONNELL:  I don't know when we took possession

15   of them.  I know as part of the search they were released to

16   the daughter.

17               THE COURT:  Were they taken as a part of the search?

18   I want to straighten out what happened here so there is no

19   question about it.

20               MR. McCONNELL:  No, they were never taken by the

21   Government because they were appropriately licensed.

22               THE COURT:  To the daughter at that time?

23               MR. McCONNELL:  They were appropriately licensed to

24   this defendant, or they did not require a license.

25               The Government would not have allowed these weapons

ARRAIGNMENT – PLEA

1  to be transferred to Mr. Zavada's daughter if she was not able

2  to law firmly possess them.

3         THE COURT:  But on the day of the search, they

4  didn't take them.

5         MR. McCONNELL:  That's my understanding.

6         THE COURT:  Did they take the other weapons, the

7  other four?

8         MR. McCONNELL:  These four were taken, the ones that

9  I just listed, that are part of the waiver of timeliness

10 because they were outside of the scope of what the defendant's

11 permit allowed at that time.

12        THE COURT:  Then after the search, the defendant had

13 the guns transferred to his daughter.  Is that what happened?

14        THE DEFENDANT:  Yes.

15        THE COURT:  Mr. Zavada, you've read over your plea

16 agreement, right?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Have you discussed it with your

19 attorney?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Do you believe you understand the

22 provisions of the plea agreement?

23        THE DEFENDANT:  Yes, I do.

24        THE COURT:  Is there anything in the plea agreement

25 that is not clear that you need explained in further detail

ARRAIGNMENT - PLEA

1    now?

2                   THE DEFENDANT:  No.

3                   THE COURT:  The Government has indicated that also a

4    part of the agreement with you is that these other weapons

5    that they just identified were going to be destroyed.  That's

6    not mentioned in your letter, but you agree to that, correct?

7                   THE DEFENDANT:  Yes.

8                   THE COURT:  Did the Government make any promises to

9    you that are not in this plea agreement?

10                  THE DEFENDANT:  No.

11                  THE COURT:  Let me just once more since it's been a

12   while go over the actual penalties.  The maximum term of

13   imprisonment is five years.  Do you understand that?

14                  THE DEFENDANT:  Yes.

15                  THE COURT:  When the Court imposes a prison term, I

16   can follow that prison term by a period of supervised release.

17   In this case the supervised release period is three years.  If

18   you violate any terms or conditions of that supervised

19   release, I can send you back to prison for two full years

20   without giving you any credit for the time you spent on

21   supervised release.  Do you understand that?

22                  THE DEFENDANT:  Yes.

23                  THE COURT:  There are financial penalties here.  The

24   maximum fine is $250,000.  There is the possibility of

25   restitution -- I'm sorry, what did you say the restitution

ARRAIGNMENT - PLEA

1   amount was?

2              MR. McCONNELL:  Along the lines of the forfeiture

3   judgment.  I think that's unlikely, but again, we're trying to

4   determine whether or not there are any losses here, and which

5   corporate entity incurred them.

6              THE COURT:  So it's a possibility of restitution in

7   the amount of $517,000; is that right?

8              MR. McCONNELL:  Right.

9              THE COURT:  Do you understand that?

10              THE DEFENDANT:  Yes.

11              THE COURT:  There is $100 special assessment, that's

12   mandatory, I have to impose that.  Do you understand that?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Also if I find that there is restitution

15   and I find an amount of money that is appropriate for

16   restitution, then I have to order restitution.  Do you

17   understand that?

18              THE DEFENDANT:  Yes.

19              THE COURT:  In addition, there are other penalties

20   which we talked a little bit about here, that's criminal

21   forfeiture.  And you have agreed to a criminal forfeiture

22   amount in approximately $517,000.  Do you understand that?

23              THE DEFENDANT:  Yes, I agree with that.

24              THE COURT:  Have you discussed sentencing guidelines

25   with your attorney and how those guidelines are calculated?

ARRAIGNMENT - PLEA

1        THE DEFENDANT:  Yes, I have.

2        THE COURT:  The Government in your plea agreement

3   letter says that they believe the guideline range is 24 to 30

4   months.  According to the plea agreement, you agree with that

5   guideline calculation.  Do you understand that?

6        THE DEFENDANT:  Yes.

7        THE COURT:  No one can tell you today what your

8   guideline range will be on the day of sentencing.  It is my

9   responsibility to make that calculation.  I don't have enough

10  information now today about the offense, your background, in

11  order to make the determination of what the guideline range

12  is.  So the possibility always exists that some factor has

13  been overlooked by the parties, and on the day of the sentence

14  the guideline range turns out to be higher.  Do you understand

15  that?

16        THE DEFENDANT:  Okay.

17        THE COURT:  That can happen.  I can't promise you

18  that 24 to 30 months on the day of sentence will be your

19  guideline range.  Do you understand that?

20        THE DEFENDANT:  Okay, yes.

21        THE COURT:  Is there anything that -- did you know

22  that before?  Did you want to mention that to your counsel?

23        MR. PALERMO:  Can I have a moment, Judge?

24        (Brief pause.)

25        THE COURT:  Do you feel like you understand that?

21

ARRAIGNMENT - PLEA

1          THE DEFENDANT:  I do understand that now.

2          THE COURT:  Once I do determine the guideline range

3    it's a very important factor in sentencing.  But I don't have

4    to follow it.  In other words, there are other factors that I

5    take into account.  The seriousness of the offense, the need

6    to promote respect for the law, policies of just punishment,

7    deterrence to criminal conduct is a factor I have to consider.

8    Then I have to take into account the circumstances of this

9    particular offense, your offense, and your background.  Do you

10   understand that?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  Also I want you to know that if you

13   enter a guilty plea today your guilty plea will stand.  You

14   cannot come back to court at the time of sentence and tell me

15   you've changed your mind and you want to go to trial.  Do you

16   understand that?

17         THE DEFENDANT:  Yes, I do.

18         THE COURT:  For that reason I want to ask you now,

19   do you have any questions at all that you would like to ask me

20   about the charge, your rights, or anything else related to

21   this matter that might not be clear?

22         THE DEFENDANT:  No.

23         THE COURT:  Counsel, do you know any reason why your

24   client should not enter a plea of guilty to the charge?

25         MR. PALERMO:  No, your Honor.

ARRAIGNMENT - PLEA

1        THE COURT:  Are you ready to plead, Mr. Zavada?

2        THE DEFENDANT:  Yes, I am.

3        THE COURT:  How do you plead to the charge in the

4   Information, guilty or not guilty?

5        THE DEFENDANT:  Guilty.

6        THE COURT:  Are you making this plea of guilty

7   voluntarily?

8        THE DEFENDANT:  Yes.

9        THE COURT:  Of your own free will?

10        THE DEFENDANT:  Yes.

11        THE COURT:  Has anyone threatened, forced or

12   pressured to you plead guilty?

13        THE DEFENDANT:  No.

14        THE COURT:  Other than the plea agreement that we've

15   discussed with the Government, has anyone made you promises

16   that have caused you to plead guilty?

17        THE DEFENDANT:  No.

18        THE COURT:  Has anyone promised you what sentence

19   you'll receive?

20        THE DEFENDANT:  No.

21        THE COURT:  I need to hear from you in your own

22   words what you did in connection with the crime that's

23   charged.

24        THE DEFENDANT:  In or about 2013 to 2020, both dates

25   approximate and inclusive, and within the Eastern District of

ARRAIGNMENT - PLEA

1    New York and elsewhere, I knowingly and intentionally used a

2    facility of the interstate commerce with the intent to carry

3    an unlawful activity; specifically, I engaged in the scheme

4    related to my employment with National Grid to receive bribes

5    without the consent of my employer in exchange for the

6    contracts with outside vendors.

7            In furtherance of this scheme, and in addition to

8    other acts, I utilized my cellphone to send and receive text

9    messages with a contractor to arrange for the receipt of cash

10   and other bribes and then met with that person.

11           I knew that my actions were wrong and illegal.

12           THE COURT:  You worked for National Grid?

13           THE DEFENDANT:  Yes.

14           THE COURT:  And the bribes were paid to you in order

15   to that contracts would be awarded to the people that were

16   paying you a bribe?

17           THE DEFENDANT:  Yes.

18           THE COURT:  And your National Grid office, where was

19   that located?

20           THE DEFENDANT:  175 East Old Country Road,

21   Hicksville, New York.

22           THE COURT:  Does the Government think I need to ask

23   any further questions?

24           MR. McCONNELL:  No.

25           THE COURT:  Counsel, do you?

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

ARRAIGNMENT - PLEA

1              MR. PALERMO:  No, I do not.

2              THE COURT:  Based on the information given to me, I

3      find the defendant is acting voluntarily, that he fully

4      understands the charges, rights, consequences of his plea.

5      There is also a factual basis for the plea, so I accept the

6      plea of guilty to the Information.

7              I previously found that the waiver of Indictment was

8      knowing and voluntary.

9              Ms. Campbell, if you can give us the sentencing

10     schedule.

11             THE COURTROOM DEPUTY:  The PSR report will be due

12     December 27, 2021.  Defense papers due January 10, 2022.

13     Government papers January 17, 2022.  And sentencing will be

14     January 24, 2022 at 11:00 a.m.

15             MR. PALERMO:  Your Honor, might I request, I don't

16     know whether this is doable, I'm on vacation for approximately

17     two weeks around the holidays.  Is there any way to push that

18     date back with respect to the defendant's papers and/or

19     motion?

20             THE COURT:  What were the dates of the papers?

21             THE COURTROOM DEPUTY:  January 10 was due date for

22     defense papers.

23             MR. PALERMO:  I'll be away that first week of

24     January and after Christmas, I won't have time.

25             THE COURT:  When is the PSR?

*Rivka Teich CSR RPR RMR FCRR*
*Official Court Reporter*

ARRAIGNMENT – PLEA

1            THE COURTROOM DEPUTY:  December 27.

2            THE COURT:  Leave the PSR, but extend it by a week,

3    everything by a week.

4            THE COURTROOM DEPUTY:  Defense papers due

5    January 17.

6            MR. PALERMO:  Thank you.

7            THE COURTROOM DEPUTY:  The Government papers are due

8    24th of January.  We'll have sentencing on the 31st at

9    10:00 a.m.

10           THE COURT:  Is that all clear?

11           MR. McCONNELL:  Yes, your Honor.

12           MR. PALERMO:  Yes.

13           THE COURT:  Thank you.

14           (Whereupon, the matter was concluded.)

15                  *    *    *    *    *

16   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

17

18   _/s/ Rivka Teich_____
     Rivka Teich, CSR RPR RMR FCRR
19   Official Court Reporter
     Eastern District of New York

20

21

22

23

24

25