# SHER TREMONTE LLP

March 4, 2022

The Honorable Carol B. Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

 Re:  *United States v. Patrick McCrann*, 21 Cr. 467 (CBA)
   *United States v. Richard Zavada*, 21 Cr. 468 (CBA)
   *United States v. Jevan Seepaul*, 21 Cr. 469 (CBA)
   *United States v. Ricardo Garcia*, 21 Cr. 460 (CBA)
   *United States v. Devraj Balbir*, 21 Cr. 586 (CBA)

Dear Judge Amon:

We write on behalf of National Grid to supplement its request for restitution filed on January 22, 2022,[1] as directed by the Court during the January 31, 2022 status conference.  Specifically, we write to clarify three issues:  first, we provide further explanation as to why Defendants' convictions constitute "offense[s] against property" that qualify for restitution under the Mandatory Victims' Restitution Act, 18 U.S.C. § 3663A, *et seq.* ("MVRA"); second, we provide additional information in support of National Grid's request for the total amount of salary and benefits paid to Defendants during the offense conduct period, and ask in the alternative that the Court order reimbursement of 20% of the salary and benefits; and third, we amend National Grid's original request for its attorneys' fees and expenses to add more recent expenses and to request partial apportionment of liability among the Defendants.

## I.    Defendants' Crimes Are Offenses Against Property Under the MVRA

As the Court is aware, the MVRA requires the Court to impose restitution for any "convictions of, or plea agreements relating to charges for, any offense . . . (A) that is . . . (ii) an offense against property under this title, . . . including any offense committed by fraud or deceit . . . in which an identifiable victim or victims has suffered a physical injury or pecuniary loss."  18 U.S.C. § 3663A(c)(1).  In determining whether an offense qualifies as one "against property" including "any offense committed by fraud or deceit," courts are not limited to the elements of conviction, but "may consider the facts and circumstances of the crime that was committed to determine if it is an 'offense against property' within the meaning of the MVRA."  *United States v. Razzouk*, 984 F.3d 181, 186 (2d Cir. 2020).  "If those facts and circumstances implicate a crime against property, the MVRA requires the court to enter a related order of restitution."  *Id.*

---

[1] *See United States v. McCrann*, 21 Cr. 467 (CBA), ECF No. 40; *United States v. Zavada*, 21 Cr. 468, ECF No. 45.

Hon. Carol B. Amon
March 4, 2022
Page 2 of 8

When all the underlying facts are considered, these offenses are clearly "offenses against property" for purposes of the MVRA.  First, the Defendants' conduct deprived National Grid of property – namely, the salary and benefits paid to Defendants for services that were dishonestly rendered.  As the Second Circuit made clear in *United States v. Bengis*, offense conduct that deprives a victim of property is sufficient to trigger restitution obligations under the MVRA.  *See* 631 F.3d 33, 39-40 (2d Cir. 2011) (in determining whether convictions for conspiracy to violate the Lacey Act and to commit smuggling were "offenses against property," asking only whether the defendants' conduct deprived South Africa of property).  In addition, while not necessary to trigger restitution under the MVRA, the Defendants' conduct also clearly involved fraud and deceit, a further basis to invoke the mandatory restitution requirements of the MVRA.[2]

### A. Defendants' Offense Conduct Deprived National Grid of Property in the Form of Unearned Salaries and Benefits

Here, Defendants' crimes were only made possible by virtue of their dereliction of duties to National Grid, and their conduct resulted in loss to National Grid in the form of salary and benefits that the company paid for services that were dishonestly rendered and devoid of value.  Specifically, Defendants "corrupted National Grid's contracting procedures in exchange for bribe payments," including by "providing non-public information about competitors' bids, awarding no-bid contracts, structuring the value of contracts to avoid additional approval requirements and providing favorable performance reviews."  *See* Gov't Sent. Memo. as to Patrick McCrann, *United States v. McCrann*, 21 Cr. 467 (CBA), ECF No. 43 at 8, 2.[3]  This conduct was in complete derogation of Defendants' employment responsibilities and interfered with the proper functioning of National Grid's procurement activities.  The fact that the government lacks proof that contract prices were inflated to any material degree as a result of the bribe payments is irrelevant.  By concealing the true nature of the vendor contracts, and by taking steps to evade procurement requirements (such as the enhanced approval requirements for purchases of goods and services in excess of $50,000, *see* Compl., ECF No. 1 ¶¶ 13, 14, 18, 21), Defendants substantially interfered with the processes put in place by National Grid to ensure that it could make informed decisions.

Had National Grid known about the offense conduct, it would have immediately terminated Defendants' employment.  Yet Defendants' concealment of their bribes allowed them to go undetected for years, during which time they accepted substantial salaries and benefits for honest services that they did not in fact provide.  And despite

---

[2] "Fraud and deceit" are not required to trigger a restitution obligation under the MVRA.  *See, e.g.*, *United States v. Kuruzovich*, No. 09 Crim. 824 DC, 2012 WL 1319805, at *3 (S.D.N.Y.  Apr. 13, 2012), *case abated*, 541 F. App'x 124 (2d Cir. 2013) (declining to "read the phrase 'including any offense committed by fraud or deceit' . . . to exclude from the MVRA's realm any crime against property committed by other illegal means, such as theft, embezzlement, and . . . blackmail.  The word 'include' makes clear that an offense involving fraud or deceit is given only as an example.").

[3] *See also* Gov't Sent. Memo as to Richard Zavada, *United States v. Zavada*, 21 Cr. 468 (CBA), ECF No. 49 at 7, 2.

Hon. Carol B. Amon
March 4, 2022
Page 3 of 8

Defendants' felony convictions related to their conduct while employed at the company, pursuant to ERISA regulations, several of the Defendants will continue to receive substantial pension payments from National Grid.  (McCrann receives $5,239.16 per month from National Grid and Zavada receives $4,230.72.  When Garcia so elects, he will receive $4,903.15 per month once he turns 65 years old.)  Under the circumstances, National Grid is clearly entitled to their unearned compensation as restitution.  *See United States v. Bahel*, 662 F.3d 610, 649 (2d Cir. 2011) ("There is no question that a portion of an individual's salary can be subject to forfeiture where . . . an employer pays for honest services but receives something less.").

The fact that Defendants pled guilty to violations of the Travel Act rather than honest services fraud is irrelevant.  The Second Circuit has held that courts "may look to the manner in which a particular crime was committed to determine if it is an 'offense against property' such as would trigger a restitution obligation under the MVRA." *Razzouk*, 984 F.3d at 188; *see also id.* at 187 (noting that the word "'committed' suggests a focus on the manner of commission" rather than a "focus on the crime's elements"). Indeed, as the Government agrees: "even if the deprivation of property is not expressly an element of the underlying crime, restitution may still be warranted upon a finding of losses resulting from the crime."  *See* Gov't Sent. Memo. as to Patrick McCrann, *United States v. McCrann*, 21 Cr. 467 (CBA), ECF No. 43 at 7-8 (citing *Razzouk*, 984 F.3d at 186-88).

Importantly, nothing in *Bahel* limits restitution of unearned compensation to convictions for honest services fraud.  Indeed, in stating that "[t]here is no question that a portion of an individual's salary can be subject to forfeiture where, as here, an employer pays for honest services but receives something less," *Bahel* cites two out-of-circuit cases, neither of which involve convictions for honest services fraud.  *See* 662 F.3d at 649 (citing *United States v. Crawley*, 533 F.3d 349, 359 (5th Cir. 2008) (awarding restitution in case involving mail fraud, embezzlement of an official ballot, embezzlement from a labor organization, and making a false entry in records required by the Labor Management Reporting and Disclosure Act); *United States v. Sapoznik*, 161 F.3d 1117, 1121 (7th Cir. 1998) (awarding restitution of unearned compensation to employer victim of employee convicted of violating the RICO statute)).  *Bahel* also elaborated on the applicability of *Sapoznik* as involving "a similar set of facts," that is, "a police chief who was convicted of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") by taking bribes to protect illegal gambling in town bars and restaurants," where the Seventh Circuit awarded a percentage of the defendant's salary as restitution.  *See Bahel*, 662 F.3d at 649-50.

In light of *Bahel*'s broad application, courts in this district have awarded salary and compensation as restitution in cases that did not involve honest services fraud convictions, including in cases where loss of salary was the victim's only loss.  *See, e.g.*, *United States v. Napout*, 15-CR-252 (PKC), 2018 WL 6106702 (E.D.N.Y. Nov. 20, 2018) (awarding 20% of benefits to victim of RICO conspiracy, conspiracy to commit wire fraud, and conspiracy to commit money laundering); *United States v. Ebrahim*, No.

Hon. Carol B. Amon
March 4, 2022
Page 4 of 8

12 Cr. 471 (JPO), 2013 WL 2216580 (S.D.N.Y. May 21, 2013) (awarding 20% of salary to victim of conspiracy to commit wire fraud and securities fraud); *United States v. Donaghy*, 570 F. Supp. 2d 411 (E.D.N.Y. 2008) (awarding percentage of compensation for games dishonestly refereed to victim employer of conspiracy to commit wire fraud and conspiracy to transmit wagering information); *see also United States v. Gupta*, 925 F. Supp. 2d 581, 588 (S.D.N.Y. 2013) (noting in securities fraud case: "Though the Court need not reach the issue, RSUs and options could have been subject to restitution in this proceeding had the Goldman Sachs board not decided to revoke them and to voluntarily withdraw its claim for restitution of salary.").

**B.  Defendants' Crimes Were Committed by Fraud and Deceit**

The facts and circumstances of Defendants' offenses also clearly involve fraud and deceit.  They took numerous steps to conceal their bribes from National Grid, including by using coded language, surreptitiously structuring purchasing requests to avoid approval requirements, and manipulating performance reviews – all without National Grid's knowledge or consent.[4]  Had National Grid known of the illegal bribes, it would have put a stop to them immediately and terminated Defendants' employment. Defendants' conduct thus involved fraud and deceit, an independent ground to render it an "offense against property" for purposes of the MVRA.  Indeed, in *United States v. Coffin*, No. 09-CR-452 ARR, 2011 WL 4962395, at *1 (E.D.N.Y. Oct. 18, 2011), Judge Ross reached precisely this conclusion with respect to the restitution obligation of defendants who had accepted bribes in connection with their employment at Con Edison. The court explained: "As a result of each defendant's actions, Con Ed was directly harmed in numerous respects, including by being deprived of the honest and faithful services of its employees.  Under these circumstances, the court concludes that each defendant was convicted of an offense 'committed by fraud or deceit' and that Con Ed was the 'victim' of such offense." *Id.*

Contrary to Defendants' argument, *United States v. Adorno* does not compel a different result.  In *Adorno*, the court determined that there was no way to measure the injury to the victim by the bribe, noting that the "extent to which [the defendant] was influenced [by the bribe], and the impact of such influence on [the victim] cannot be

---

[4] Of course, the predicate offense of the Travel Act to which the Defendants pled guilty requires both a lack of consent on the part of the employer and the acceptance of bribes with the "agreement or understanding that such benefit will influence his conduct in relation to his employer's or principal's affairs."  N.Y. Penal Law § 180.05.  Other courts have applied the MVRA to convictions for conspiracy to violate the Travel Act when the underlying predicate was Commercial Bribery in the Second Degree.  *See United States v. Finazzo*, No. 10-CR-457 RRM RML, 2014 WL 3818628, at *12-13 (E.D.N.Y. Aug. 1, 2014), *vacated on other grounds*, 850 F.3d 94 (2d Cir. 2017) (concluding that the defendants' "scheme to generate secret profits through illegal kickbacks co-opted Aeropostale's ability to make strategic economic decisions, concealed crucial information about the true nature of significant transactions, and redirected business relationships to their own advantage – all of which were patently fraudulent and deceitful."); *see also United States v. Zangari*, 677 F.3d 86 (2d Cir. 2012) (applying the MVRA to a conviction for conspiracy to violate the Travel Act, with the same underlying state law predicate – Commercial Bribery in the Second Degree).

Hon. Carol B. Amon
March 4, 2022
Page 5 of 8

determined."  950 F. Supp. 2d 426, 430 (E.D.N.Y. 2013).  Here, by contrast, there is ample documentation of how the bribes impacted National Grid and its employment of Defendants over a period of many years.  *See also Razzouk*, 984 F.3d at 189 n.10 (distinguishing *Adorno*).  Defendants manipulated National Grid's procurement process by selecting vendors based on illegal bribes rather than on accurate and complete bids, safety, and performance evaluations.  Importantly, even though there was no evidence that National Grid paid more than fair market value for the contracted services, Defendants' offense conduct compromised the integrity of National Grid's procurement activities in addition to causing immeasurable damage to its reputation, goodwill, and employee morale.  An honest employee would have instead put the procurement processes to good use.

Finally, even if the Court concludes that Defendants' convictions are not "offenses against property" within the meaning of the MVRA, restitution is also appropriate under the VWPA under Section 3663, which provides that, when sentencing a defendant the court may, in its discretion, order restitution.  *See* 18 U.S.C. § 3663(a)(1)(A) ("The court, when sentencing a defendant convicted of an offense under this title . . . other than an offense describe in section 3663A(c), may order . . . that the defendant make restitution to any victim of such offense . . . ."); *see United States v. Battista*, 575 F.3d 226, 230 (2d Cir. 2009).  Such discretionary relief is appropriate here, given National Grid's losses in the form of unearned salaries and benefits paid to Defendants over the course of many years, as well as the fact that several of the Defendants will continue to receive substantial pension benefits from National Grid. Importantly, any restitution received by National Grid will be returned to its customers, who were the ultimate victims of Defendants' crimes.

## II.      National Grid is Entitled to the Total Amount of Compensation Paid to Defendants During the Relevant Time Period

National Grid is entitled to the salaries and benefits paid to each defendant during the offense conduct period.[5]  While the Government states that this figure is "difficult to justify under prevailing caselaw," Gov't Sent. Memo. (Jan. 24, 2022), ECF No. 43 at 7, *United States v. McCrann*, No. 21-CR-467 (CBA), we respectfully submit that the total amount is appropriate unless and until Defendants can establish their entitlement to an offset for honest services rendered.

In *United States v. Bryant*, 655 F.3dd 232, 254 (3d Cir. 2011), the Third Circuit explained that, where a defendant has failed to prove entitlement to an offset for services rendered, an award equaling 100% of the salary and benefits paid by the victim employer is appropriate.  The Third Circuit elaborated as follows:

---

[5] Information concerning the calculation of Defendants' salaries and benefits have been provided to Defendants and are attached as Exhibit A (under seal).  Because this information consists of commercially sensitive information, including confidential salary and benefit information, we respectfully request that it be filed under seal.

Hon. Carol B. Amon
March 4, 2022
Page 6 of 8

Under the MVRA, the Government has the burden of proving the amount of the victim's loss, but the defendant has "[t]he burden of demonstrating such other matters as the court deems appropriate," 18 U.S.C. § 3664(e).  In other cases where offsets are claimed, such as for compensation that the victim gets from other sources, other Courts of Appeals have concluded that it is the defendant's burden to prove those offsets.  *See United States v. Elson*, 577 F.3d 713, 734 (6th Cir.2009); *United States v. Calbat*, 266 F.3d 358, 365 (5th Cir.2001).  Likewise, with respect to an offset for services rendered, we believe that, because "[t]he restitution statute allocates the various burdens of proof among the parties who are best able to satisfy those burdens [,] . . . the defendant should know the value of any [legitimate services] he has already provided to the victim[, and so] . . . the burden should fall on him to argue for a reduction in his restitution order." *Elson*, 577 F.3d at 734 (citation and internal quotation marks omitted).  Because it was Appellants' burden to prove offsets for any legitimate services Bryant might have rendered, and they failed to do so at sentencing, we conclude that the District Court did not abuse its discretion in ordering $113,167 in restitution.

*Id*.

Awarding the total amount of compensation paid to Defendants is also consistent with the civil remedies available to National Grid against defendants, *see, e.g.*, *Calderon v. Mullarkey Realty, LLC*, No. 14-CV-2616, 2018 WL 2871834, at *7 (E.D.N.Y. June 10, 2018) (measure of damages under faithless servant doctrine is forfeiture of all compensation paid to the employee from the date of the first disloyal act to the last date of employment, including total salary plus all other forms of compensation and benefits paid to the employee during the entire period of his or her disloyalty), and "where an analogous private right of action exists, caselaw under it may inform, but perhaps not control, causation determinations in restitution proceedings." *United States v. Marino*, 654 F.3d 310, 321 (2d Cir. 2011).

Finally, an award of Defendants' total compensation is also "in keeping . . . with the broad remedial purposes of the MVRA," which is "designed 'to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being.'" *Razzouk*, 984 F.3d at 188 (quoting *United States v. Maynard*, 743 F.3d 374, 377-78 (2d Cir. 2014)).  "To carry out such a sweeping directive and to ensure that victims are compensated for losses to their property, Congress could reasonably have intended that courts look to whether the crime in fact caused damage to a victim's interests in personal or other property so that the loss or damage could be estimated and payment of restitution ordered." *Id*.

In the alternative, should the Court find that some offset is warranted, we request that the Court order restitution in the amount of 20% of the Defendants' total salaries and benefits earned during the offense conduct periods.  As the Government explains, this result is consistent with the practice of other courts in this District.  *See* Gov't Sent.

Hon. Carol B. Amon
March 4, 2022
Page 7 of 8

Memo. as to Patrick McCrann, *United States v. McCrann*, 21 Cr. 467 (CBA), ECF No. 43
at 9 (citing cases).

### III.   National Grid's Attorneys' Fees and Expenses Can Be Partially Apportioned Among the Defendants

After National Grid filed its initial request for restitution on January 24, 2022, the Second Circuit issued its decision in *United States v. Afriyie*, -- F.4th --, 2022 WL 569701 (2d Cir. 2022), which squarely held that attorneys' fees incurred in connection with the investigation or prosecution of the offense are compensable as restitution under the MVRA. This includes work responding to subpoenas and document requests from the U.S. Attorney's Office and work in connection with restitution proceedings. *See id.* at *10.

National Grid has incurred a total of $237,495.80 in connection with assisting the investigation and prosecution of the offense, and for work relating to its request for restitution.[6] Some of these expenses can be attributed solely to Defendant Balbir, who pled guilty on December 2, 2022, approximately two months after the other four defendants pled guilty. During this two-month period, the government continued to seek the assistance of National Grid in its prosecution of Defendant Balbir, including by requesting documents and requiring subpoena compliance. The losses that can be attributed solely to Defendant Balbir for work conducted during this two-month period amount to $79,533.50.

The remainder of the legal fees and investigation expenses – $157,962.30 – relate to work in connection with the investigation as a whole and the preparation of National Grid's request for restitution. These expenses include subpoena compliance, responses to requests for information from the government, and communications with the Assistant United States Attorneys, all of which related to the investigation and prosecution generally, and were not specific to any particular defendant. Because each defendant contributed to this loss, the Court may make each defendant liable, on a joint and several basis, for payment of the full amount. *See Napout*, 2018 WL 6106702, at *14 (imposing restitution for investigation and restitution expenses on a joint and several basis).

---

[6] Records of these legal expenses have been provided to defense counsel and are attached as Exhibit B (under seal). This amount includes more recent legal fees expended and reflects a decrease from National Grid's original request to account for the elimination of certain time entries which may have also included work outside the scope of reimbursable expenses in addition to work related to assisting the government.

Hon. Carol B. Amon
March 4, 2022
Page 8 of 8

\*   \*   \*

        Based on the foregoing, we respectfully request the following amounts in restitution:

| Defendant | Salary and Compensation | Legal Fees & Investigation Expenses |
|---|---|---|
| McCrann | $1,048,653.67 | $157,962.30 (jointly and severally with all defendants) |
| Zavada | $1,247,980.83 | $157,962.30 (jointly and severally with all defendants) |
| Garcia | $1,117,709.39 | $157,962.30 (jointly and severally with all defendants) |
| Seepaul | $576,685.40 | $157,962.30 (jointly and severally with all defendants) |
| Balbir | $539,524.79 | $157,962.30 (jointly and severally with all defendants) & $79,533.50 (individually) |

We appreciate the Court's consideration.

Respectfully submitted,

/s/_____

Michael Tremonte
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
T: (212) 202-2600
F: (212) 202-4156
mtremonte@shertremonte.com

Cc:    All counsel (by ECF); U.S. Probation Officer Michelle Malko (by email)